## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

```
*************************************
JESSICA BREWSTER                    *      CIVIL ACTION NO.:
                                    *
                                    *
VERSUS                              *
                                    *
J. COLLIN SIMS, IN HIS OFFICIAL     *      JUDGE:
CAPACITY AS INTERIM DISTRICT        *
ATTORNEY OF ST. TAMMANY             *
PARISH (AND AS SUCCESSOR TO         *
WARREN MONTGOMERY                   *      MAGISTRATE:
*************************************
```

## COMPLAINT

**NOW INTO COURT,** through undersigned counsel, come Plaintiff, Jessica Brewster, and respectfully represents as follows:

### I.   PARTIES

1.

Plaintiff, **JESSICA BREWSTER**, is an individual of the age of majority, a resident of St. Tammany Parish and a citizen of the State of Louisiana.

2.

Made Defendant herein is **J. COLLIN SIMS**, **IN HIS OFFICIAL CAPACITY AS INTERIM DISTRICT ATTORNEY OF ST. TAMMANY PARISH** (and as successor to Warren Montgomery, former District Attorney of St. Tammany Parish), who upon information and belief, is an individual of the age of majority, a resident of St. Tammany Parish and a citizen of the State of Louisiana.[1]

---

[1] At all relevant times and with respect to all the factual allegations stated herein, Warren Montgomery was the District Attorney of St. Tammany Parish. However, on November 11, 2023, Mr. Montgomery passed away. Upon his passing, First Assistant District Attorney J. Collin Sims became interim District Attorney of St. Tammany Parish, making him, in his official capacity, the proper Defendant in this suit.

## II.    JURISDICTION AND VENUE

3.

Jurisdiction in this Court is based upon federal question jurisdiction pursuant to 28 U.S.C. § 1331 as the claims at issue arise out of 42 U.S.C. § 1983 *et seq* and 29 U.S.C. § 2601. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4.

Defendant's residence and Louisiana business location are within the Eastern District of Louisiana, and at all times relevant to this Complaint, Defendant was engaged in commerce in the State of Louisiana.

5.

Venue is proper in this District pursuant to 28 U.S.C. § 1391, as Defendant's actions occurred in the Eastern District of Louisiana, Plaintiff and Defendant reside in the Eastern District of Louisiana and Plaintiff's damages were suffered and occurred in the Eastern District of Louisiana.

## III.    FACTUAL BACKGROUND

6.

Ms. Brewster is a former employee of the St. Tammany Parish District Attorney's office.

7.

Ms. Brewster began her regular, full-time employment with the St. Tammany Parish District Attorney's office in August, 2004 under then District Attorney, Walter Reed.

8.

Ms. Brewster had previously worked at the St. Tammany Parish District Attorney's office in the summer of 2001 as a summer worker before starting law school.

9.

When she returned to the St. Tammany Parish District Attorney's office in 2004 after graduating from law school and awaiting the results of the bar exam, Ms. Brewster was tasked with the collection of old bond forfeiture judgments.

10.

In October, 2004, Ms. Brewster was admitted to practice law and was thereafter offered a full time position as an Assistant District Attorney in the Bond and Asset Forfeiture Division of the St. Tammany Parish District Attorney's office.

11.

In 2014, Warrant Montgomery was elected as District Attorney of St. Tammany Parish.

12.

After Mr. Montgomery was elected, Ms. Brewster continued in her position as an Assistant District Attorney in the Bond and Asset Forfeiture Division.

13.

When Mr. Montgomery was elected and began his administration, Ms. Brewster's immediate supervisor was Tony Sanders.

14.

Mr. Sanders remained Ms. Brewster's supervisor until April, 2021.

15.

In April, 2021, shortly after Mr. Montgomery was re-elected as District Attorney, Ms. Brewster was advised during a meeting with Mr. Sims (who at the time was another assistant district attorney) that Mr. Sims would now be Ms. Brewster's supervisor.

16.

Approximately one year later, in May, 2022, Ms. Brewster met with Mr. Montgomery to inform him of her intention to run for the office of St. Tammany Parish Clerk of Court.

17.

In addition to being protected by state and federal law (as discussed below), Ms. Brewster's decision to run for St. Tammany Parish Clerk of Court is protected by the St. Tammany Parish District Attorney's office's Employee Handbook, which specifically provides that employees are allowed to participate in the political process:

> Political Activity
>
> **All employees may participate as private individuals in the political process.** No office resources, including equipment and including office identifications and logos, may be used to support any political purpose. Employees may not use their official authority or influence to interfere with or affect the result of an election; may not knowingly solicit or discourage the participation in any political activity of anyone who has business pending before this office; may not engage in political activity, i.e. activity directed at the success or failure of a political party, candidate for partisan office, or partisan political group while the employee is on duty, in any District Attorney office, while wearing a uniform or official insignia, or using a District Attorney leased/provided vehicle.

(emphasis added).

18.

After suggesting that Ms. Brewster should go home and discuss the idea with her family and pray about it, Mr. Montgomery told Mr. Brewster that if she decided to run for St. Tammany Parish Clerk of Court, she would be allowed to remain employed with the District Attorney's office until qualifying – which was from August 8, 2023 through August 10, 2023.

19.

Mr. Montgomery's position at that time to allow Ms. Brewster to remain employed until qualifying was not only consistent with the St. Tammany Parish District Attorney's own employee handbook policy (cited above), but was also consistent with what Mr. Montgomery had allowed for male employees of the District Attorney's office that had previously announced they were going to be candidates for public office while employed at the St. Tammany Parish District Attorney's office.

20.

However, contrary to what had been previously allowed for male employees that chose to run for office while employed by the St. Tammany Parish District Attorney's office, Mr. Montgomery advised Ms. Brewster that if she was not elected as St. Tammany Parish Clerk of Court, she would not be allowed to return to her employment with the St. Tammany Parish District Attorney's office.

21.

Moreover, Mr. Montgomery compared Ms. Brewster's decision to run for Clerk of Court to someone running against him that was employed in the Parish President's office - implying that because he would not like someone in the Parish President's office running against him, the incumbent Clerk of Court, Melissa Henry, would not like someone from the District Attorney's Office (Ms. Brewster) running against her either.

22.

For the next several months (May-December, 2022), Ms. Brewster continued to perform her job duties in the same effective manner as she always had prior to informing Mr. Montgomery of her intention to run for St. Tammany Parish Clerk of Court.

23.

On December 12, 2022, Ms. Brewster was called into a meeting with Mr. Montgomery and Mr. Sanders.

24.

During that meeting, Mr. Montgomery told Ms. Brewster that "we weren't friends before I was elected and we are not friends now either."

25.

Mr. Montgomery then told Ms. Brewster that he was, however, friends with Melissa Henry, the incumbent St. Tammany Parish Clerk of Court that Ms. Brewster was running against, and therefore because Ms. Brewster was running for office against his friend and political ally, he was terminating Ms. Brewster's employment.

26.

The fact that Mr. Montgomery and Ms. Henry were friends is borne out by campaign finance records that demonstrate that Mr. Montgomery made financial contributions to Ms. Henry's campaigns on at least three separate occasions over the years.

27.

In the Termination Notice Form given to Ms. Brewster, Mr. Montgomery made it clear that Ms. Brewster was being terminated because of her decision to run for elected office, St. Tammany Parish Clerk of Court:

> Pursuant to our meeting on Monday, December 12, 2022, it is clear that you have, while an appointed assistant district attorney, become a partisan candidate for and are actively campaigning for, an elected public office affiliated with the judicial branch of government. Your candidacy is incompatible with the need to protect and preserve the integrity of the District Attorney's office.

28.

Prior to her termination of employment, Ms. Brewster did not spend any time during working hours on her campaign.  In fact, prior to her termination, Ms. Brewster did not spend any significant time campaigning at all.

29.

Ms. Brewster's decision to run for St. Tammany Parish Clerk of Court did not interfere in any way with the ability of Ms. Brewster to perform her duties as an Assistant District Attorney.

30.

Ms. Brewster's decision to run for St. Tammany Parish Clerk of Court also did not interfere in any way with the St. Tammany Parish District Attorney's ability to function and perform its duties.

31.

Ms. Brewster's decision to run for St. Tammany Parish Clerk of Court also did not interfere with the alleged "need to protect and preserve the integrity of the District Attorney's Office."

32.

In previous years while Mr. Montgomery was the District Attorney of St. Tammany Parish, several other (male) employees of the St. Tammany Parish District Attorney's office ran for "an elected public office affiliated with the judicial branch of government," but were not terminated because of an alleged "need to protect and preserve the integrity of the District Attorney's office."

33.

In 2017, Assistant District Attorney Jay Adair announced his intention to run for the office of Judge of the 22nd Judicial District.

34.

Mr. Adair was allowed to stay employed by Mr. Montgomery until qualifying, at which time he was allowed to resign.

35.

After Mr. Adair lost the election for Judge of the 22nd Judicial District Court, he was rehired by Mr. Montgomery.

36.

In 2019, Mr. Adair again announced he was running for the office of Judge of the 22nd Judicial District.

37.

Mr. Adair was again allowed to stay employed by Mr. Montgomery after that announcement.

38.

Later, Mr. Adair was again rehired by Mr. Montgomery as an Assistant District Attorney at the St. Tammany Parish District Attorney's office.

39.

In 2019, Assistant District Attorney Harold Bartholomew announced his intention to run for the office of Judge in the 22nd Judicial District.

40.

Mr. Bartholemew was allowed to stay employed by Mr. Montgomery until qualifying for that race, at which time he was allowed to resign.

41.

After Mr. Bartholomew lost the election for Judge of the 22nd Judicial District Court, he was rehired by Mr. Montgomery.

42.

In 2019, Assistant District Attorney David M. Duke announced his intention to run for the office of Bogalusa City Court Judge.

43.

Mr. Duke was allowed to stay employed by Mr. Montgomery until qualifying for that race, and was thereafter allowed to resign.

44.

Confirming that the sole basis for Ms. Brewster's termination was her decision to run for St. Tammany Parish Clerk of Court, Mr. Sims told Ms. Brewster later in December, 2022 (after her termination) that if she withdrew from the race for St. Tammany Parish Clerk of Court, he would ask Mr. Montgomery to re-hire Ms. Brewster.

45.

In terminating Ms. Brewster's employment because she chose to run for St. Tammany Parish Clerk of Court, Mr. Montgomery violated state law, federal law and the St. Tammany Parish District Attorney's office's own written policies.

## IV.   CAUSES OF ACTION

### A.   Violation of 42 U.S.C. § 1983

46.

42 U.S.C. § 1983 states that "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ."

47.

Defendant, in his official capacity as interim District Attorney of St. Tammany Parish (and successor to Warren Montgomery, the former District Attorney of St. Tammany Parish), is a "person" within the meaning of 42 U.S.C. § 1983.

48.

Ms. Brewster is a "citizen of the United States" within the meaning of 42 U.S.C. § 1983.

49.

As set forth fully herein above and below, Mr. Montgomery willfully, and under color of state law, abridged Ms. Brewster's rights guaranteed by the First Amendment of the United States Constitution by terminating her employment for exercising her right to run for political office and opposing the political positions and allies of Mr. Montgomery while he was the District Attorney of St. Tammany Parish.

50.

Ms. Brewster's decision to run for the office of St. Tammany Parish Clerk of Court, as detailed above, was a matter of public concern as it constituted expression of Ms. Brewster's political activity. *See United States v. Tonry*, 605 F.2d 144, 150 (5th Cir. 1979) ("There is no question that candidacy for office and participating in political activities are forms of expression protected by the first amendment.").

51.

Furthermore, Ms. Brewster's interest in running for political office outweighed any legitimate interest the St. Tammany Parish District Attorney's office allegedly had in promoting the efficiency of the public service performed by Ms. Brewster or the District Attorney's office.

52.

At the time she was terminated, Ms. Brewster had not engaged in any campaigning activity that could have, in any conceivable way, been a threat or hindrance to the efficiency of the St. Tammany Parish District Attorney's office.

53.

Ms. Brewster's announcement that she intended to run for St. Tammany Parish Clerk of Court did not affect the efficiency of the public service performed by Ms. Brewster or the operation and efficiency of the St. Tammany Parish District Attorney's office.

54.

Moreover, the position held by Ms. Brewster at the St. Tammany Parish District Attorney's office was not one such that "political loyalty" to Mr. Montgomery's preferred choice for St. Tammany Parish Clerk of Court was a necessary prerequisite of the job or necessary to Ms. Brewster's performing her job competently and professionally.

55.

Ms. Brewster was not "disloyal" to the St. Tammany Parish District Attorney's Office by running for St. Tammany Parish Clerk of Court.

56.

At the time Mr. Montgomery fired Ms. Brewster for running for the office of St. Tammany Parish Clerk of Court, the law was well settled that an employer could not terminate an employee for exercising his or her right to seek public office.

57.

Mr. Montgomery either knew or should have known of such settled law, but ignored the law in terminating Ms. Brewster's employment.

58.

Mr. Montgomery's action in terminating Ms. Brewster's employment reflected the custom, usage, policy and practice of the St. Tammany District Attorney's Office, under color of law, as established by Mr. Montgomery while he was District Attorney.

59.

Alternatively, Mr. Montgomery was the final policymaker with respect to the decision to terminate Ms. Brewster, and as such, utilized that authority in making the decision to terminate Ms. Brewster's employment because of her candidacy for St. Tammany Parish Clerk of Court.

60.

As admitted in the letter sent to Ms. Brewster (quoted above), Mr. Montgomery made the decision to terminate Ms. Brewster's employment based solely on her decision to run for the office of St. Tammany Parish Clerk of Court.

61.

As the direct and proximate result of Mr. Montgomery's illegal action in violating Ms. Brewster's rights under the United States Constitution, Ms. Brewster sustained damages, including, but not limited to special damages (back pay, lost benefits, etc.), general damages (emotional distress, annoyance, loss of enjoyment of life, embarrassment and humiliation), punitive damages (to the extent allowed by law) and all costs and attorney's fees.

**B.      Violation of La. R.S. 23:961**

62.

La. R.S. 23:961, entitled "Political rights and freedom; restrictions forbidden; penalty; employees' right to recover damages," provides as follows in pertinent part:

> Except as otherwise provided in R.S. 23:962, **no employer having regularly in his employ twenty or more employees shall make, adopt, or enforce any rule, regulation, or policy forbidding or**

> **preventing any of his employees from engaging or participating in politics, <u>or from becoming a candidate for public office.</u>** No such employer shall adopt or enforce any rule, regulation, or policy which will control, direct, or tend to control or direct the political activities or affiliations of his employees, nor coerce or influence, or attempt to coerce or influence any of his employees by means of threats of discharge or of loss of employment in case such employees should support or become affiliated with any particular political faction or organization, or participate in political activities of any nature or character.

(emphasis added).

63.

Mr. Montgomery, in his official capacity as District Attorney of St. Tammany Parish, was Ms. Brewster's employer pursuant to La. R.S. 23:961.

64.

Defendant employed more than 20 employees during all relevant times herein, including during the final year Ms. Brewster was employed at the St. Tammany Parish District Attorney's office.

65.

Mr. Montgomery, in his official capacity as District Attorney of St. Tammany Parish, implemented a rule/policy in which Ms. Brewster was terminated for her decision to run for St. Tammany Parish Clerk of Court.

66.

The rule/policy implemented by Mr. Montgomery punished Ms. Brewster for engaging in politics, specifically her decision to run for the public office of St. Tammany Parish Clerk of Court.

67.

The rule/policy implemented by Mr. Montgomery likewise tended to control or direct the political activities or affiliations of St. Tammany Parish District Attorney employees, and had the result of coercing and influencing those employees by means of the threat of or actual loss of employment.

68.

This threat was evidenced by the actual termination of Ms. Brewster's employment because of her decision to run for St. Tammany Parish Clerk of Court.

69.

As the direct and proximate result of Mr. Montgomery's illegal actions in violating La. R.S. 23:961, Ms. Brewster sustained damages, including, but not limited to special damages (back pay, lost benefits, etc.), general damages (emotional distress, annoyance, loss of enjoyment of life, embarrassment and humiliation) and all costs and attorney's fees.

### C.    Violation of La. R.S. 23:332

70.

La. R.S. 23:332 provides as follows, in pertinent part:

A. **It shall be unlawful discrimination in employment for an employer to** engage in any of the following practices:

(1) Intentionally fail or refuse to hire or **to discharge any individual, or otherwise to intentionally discriminate against any individual with respect to his compensation, or his terms, conditions, or privileges of employment, because of the individual's** race, color, religion, **sex**, or national origin.

(2) Intentionally limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities, or otherwise adversely affect his status as an employee, because of the individual's race, color, religion, sex, or national origin.

71.

La. R.S. 23:302 defines "employer" as "a person, association, legal or commercial entity, the state, or any state agency, board, commission, or political subdivision of the state receiving services from an employee and, in return, giving compensation of any kind to an employee. The provisions of this Chapter shall apply only to an employer who employs twenty or more employees within this state for each working day in each of twenty or more calendar weeks in the current or preceding calendar year."

72.

Defendant is an employer pursuant to the Louisiana Employment Discrimination law, La. R.S. 23:301 *et seq*. and for purposes of La. R.S. 23:332, as Defendant employed more than 20 employees within the state over the relevant time period (2022-2023) and received services from Ms. Brewster in return for paying her compensation.

73.

Ms. Brewster was an employee of the St. Tammany Parish District Attorney's office/Defendant during all relevant times herein (2022) until her termination in December, 2022.

74.

As noted above, while Mr. Montgomery allowed male employees who chose to run for political office the opportunity to continue to work at the St. Tammany Parish District Attorney's Office until qualifying, Ms. Brewster (a female employee) was not allowed to do so.

75.

In so doing, Mr. Montgomery intentionally segregated and/or classified his employees on the basis of sex and deprived Ms. Brewster of the opportunity to remain employed when he terminated her employment.

76.

As a result of Mr. Montgomery's discriminatory action, Ms. Brewster suffered damages and, pursuant to La. R.S. 23:303, is entitled to compensatory damages, back pay, benefits, reasonable attorney fees, and court costs.

**WHEREFORE**, Plaintiff, Jessica Brewster, prays that Defendant, J. Collin Sims, in his official capacity as interim District Attorney of St. Tammany Parish (and as successor to Warren Montgomery, former District Attorney of St. Tammany Parish), be served with a copy of the Complaint and be cited to appear and answer same and that after due proceedings are had, that judgment be rendered in favor of Plaintiff and against Defendant, in an amount to compensate Plaintiff for all damages, punitive damages, penalties, wages, interest, costs and attorney's fees, to which she is entitled by law, and for such other damages and relief as this Court may deem just and proper.

Respectfully submitted,

**THE DEMMONS LAW FIRM, LLC.**

s/Larry E. Demmons
**LARRY E. DEMMONS** (#24376)
3201 Ridgelake Drive
Metairie, Louisiana 70002
Telephone: (504)-296-6417
Facsimile:  (504)-335-0749

**COUNSEL FOR PLAINTIFF,
JESSICA BREWSTER**

## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **JESSICA BREWSTER** | * | **CIVIL ACTION NO.:** |
| | * | |
| | * | |
| **VERSUS** | * | |
| | * | |
| **J. COLLIN SIMS, IN HIS OFFICIAL** | * | **JUDGE:** |
| **CAPACITY AS INTERIM DISTRICT** | * | |
| **ATTORNEY OF ST. TAMMANY** | * | |
| **PARISH (AND AS SUCCESSOR TO** | * | |
| **WARREN MONTGOMERY** | * | **MAGISTRATE:** |

## VERIFICATION

   **NOW INTO COURT**, through undersigned counsel, comes Jessica Brewster, who states

as follows:

   1.   That she is of the full age of majority and makes this Verification on personal
        knowledge;

   2.   That she has read the foregoing Complaint; and

   3.   That the facts set forth in the foregoing Complaint are true and correct to the best
        of her knowledge and belief.


        _____
        JESSICA BREWSTER