UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JESSICA BREWSTER | § | CASE NO.: 2:23-cv-07193-EEF-MBN |
| | § | |
| VERSUS | § | JUDGE ELDON E. FALLON |
| | § | |
| J. COLLIN SIMS, IN HIS OFFICIAL | § | MAGISTRATE JUDGE |
| CAPACITY AS INTERIM DISTRICT | § | MICHAEL B. NORTH |
| ATTORNEY OF ST. TAMMMANY | § | |
| PARISH (AND AS SUCCESSOR TO | § | |
| WARREN MONTGOMERY) | § | |

**ORDER**

Before the Court is Defendant J. Collin Sims' 12(b)(6) Motion to Dismiss. R. Doc. 21. Plaintiff Jessica Brewster filed an opposition. R. Doc. 23.  Sims filed a reply. R. Doc. 27. On May 8, 2024, the Court heard oral argument on the matter. R. Doc. 29. Considering the briefing, applicable law, and oral argument, the Court now rules as follows.

I.      BACKGROUND

This case arises out of Plaintiff Jessica Brewster's alleged unlawful termination. Brewster began her employment with St. Tammany Parish (the "Parish") District Attorney's Office (the "Office") in August 2004, under then District Attorney ("DA") Walter Reed. R. Doc. 19 at 3. In October of 2004, she was offered a fulltime position as an Assistant District Attorney ("ADA") in the Bond and Asset Forfeiture Division of the Office. *Id.* In 2014, Warren Montgomery was elected District Attorney of the Parish and Brewster continued her employment in the same position. *Id.* She alleges that in this position she was not accorded the same status of discretion as other ADAs. R. Doc. 24 at 2. She further alleges that as a result, all DAs that she worked for, including Defendant J. Collin Sims, considered her to occupy a second-tier position. *Id.*

As an ADA in the Bond and Asset Forfeiture Division, Brewster's position largely involved entering into settlements with individuals. R. Doc. 19 at 6. However, she alleges that she

1

did not have authority to enter any settlement but had to report to various supervisors relating settlement discussions who had the ultimate authority. *Id.* For most of her employment, Tony Sanders was Brewster's supervisor. *Id.* at 3. She further alleges that she never made, set, or implemented policy, but rather followed the policies and procedures instituted by her supervisors. R. Doc. 24 at 3-4. Additionally, she alleges that she was never privy to any confidential discussions with Montgomery or about the Office. *Id.* at 4.

In May 2022, Brewster met with Montgomery to inform him of her intention to run for Clerk of Court of St. Tammany Parish. *Id.* Montgomery then allegedly told her to go home, discuss the idea with her family, and pray about it. *Id.* He also allegedly stated that she would be allowed to remain employed with the Office until qualifying—which was from August 8 to 10, 2023. *Id.* She alleges that at that conversation, Montgomery did not tell her that her decision to run for office would be "incompatible with the need to protect and preserve the integrity of the District Attorney's office" or be disloyal towards him. *Id.*

On December 12, 2022, Brewster was called into a meeting with Montgomery and Sanders. *Id.* at 5. At that meeting, Montgomery allegedly told Brewster that he was never friends with her, but instead was friends with her opponent—Melissa Henry. *Id.* Accordingly, he allegedly informed her that he was terminating Brewster's employment. *Id.* Brewster's Termination Form stated:

> Pursuant to our meeting on Monday, December 12, 2022, it is clear that you have, while an appointed assistant district attorney, become a partisan candidate for and are actively campaigning for, an elected public office affiliated with the judicial branch of government. Your candidacy is incompatible with the need to protect and preserve the integrity of the District Attorney's office.

*Id.* Brewster alleges that prior to her termination, she did not spend any time during working hours on her campaign or any significant time campaigning at all. *Id.* She further alleges that her decision to run for this position did not interfere with her ability to perform as an ADA.

*Id.* at 5-6. Additionally, she alleges that the Office's Employee Handbook, grants employees the right to participate in the political process as private individuals.[1] *Id.* at 6. Further, she alleges that Montgomery previously allowed other employees of the Office run for public judicial office and remain employed until qualifying for such elections. R. Doc. 19 at 11-14.

Brewster alleges that during her employment she was always loyal to Montgomery and her decision to run for Clerk of Court did not interfere with that loyalty. *Id.* at 14-15. She further alleges that decision did not threaten or affect the integrity of the DA's office either. Sims became interim DA upon Montgomery's passing. *Id.* at 3.

As a result of these actions, on December 6, 2023, Brewster filed a complaint against J. Collin Sims, in his official capacity as interim DA of St. Tammany Parish (and as successor to Montgomery). R. Doc. 1. On January 30, 2024, Sims filed a motion to dismiss Brewster's claims. R. Doc. 8. On March 13, 2024, Brewster filed an unopposed motion for leave to file an amended complaint, which the Court granted. R. Docs. 13, 18. In her Amended Complaint, she alleges violations of 42 U.S.C. § 1983 because Montgomery abridged her First Amendment rights when he terminated her employment and violations of La R.S. 23:961. R. Doc. 19 at 19-27. She additionally raises claims for equitable estoppel/detrimental reliance and waiver. *Id.* She seeks compensation for all damages, wages, interest, costs and attorney's fees, which she may be entitled to by law, and other relief that this Court may deem just and proper. *Id.* at 28. In response to these allegations, defendant Sims filed the instant motion to dismiss. R. Doc. 21.

---

[1] The relevant portion of the handbook provides "All employees may participate as private individuals in the political process. No office resources, including equipment and including office identifications and logos, may be used to support any political purpose. Employees may not use their official authority or influence to interfere with or affect the result of an election; may not knowingly solicit or discourage the participation in any political activity of anyone who has business pending before this office; may not engage in political activity, i.e. activity directed at the success or failure of a political party, candidate for partisan office, or partisan political group while the employee is on duty, in any District Attorney office, while wearing a uniform or official insignia, or using a District Attorney leased/provided vehicle. *Id.* at 6.

## II.     LAW AND ANALYSIS

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556. A claim is plausible on its face when the plaintiff has pled facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 570. Although a court must liberally construe the complaint in light most favorable to the plaintiff, accept the plaintiff's allegations as true, and draw all reasonable inferences in favor of the plaintiff, *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir. 1996), courts "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions*." Arias-Benn v. State Farm Fire & Cas. Co.*, 495 F.3d 228, 230 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

"While a court is generally limited to factual allegations contained in the pleadings when ruling on a Rule 12(b)(6) motion to dismiss, a court may consider documents attached to a defendant's motion to dismiss 'if they are referred to in the plaintiff's complaint and are central to her claim'" *Moton v. Underwriters at Lloyd's London*, No. 22-3634, 2023 WL 6804365, *1, *2 (E.D. La. Sept. 7, 2023) (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)).

### a. Brewster's 42 U.S.C. §1983 Claim

In his motion, Sims first argues that Brewster's claim under 42 U.S.C. § 1983 should be dismissed because the Fifth Circuit holds that government employees in policymaker roles may be

4

terminated for political reasons without violating their First Amendment rights. R. Doc. 21. He argues that Brewster's termination did not violate the First Amendment because as an ADA, she served a policymaker role, as defined by the Fifth Circuit. *Id.* Accordingly, he argues that Brewster's claim fails and must be dismissed. Brewster argues that despite being an ADA, her employment duties did not involve "confidential" or "policymaking" tasks. R. Doc. 24. Thus, her termination violated her rights under the First Amendment.

To state a claim under § 1983, Brewster must first allege a violation of a right secured by the Constitution or laws of the United States, and second, demonstrate that the alleged deprivation was committed by a person acting under the color of state law. *Whitley v. Hannah*, 726 F.3d 631, 639 (5th Cir. 2013). Brewster alleges that Sims' actions, in his official capacity, violated her right to engage in political activity under the First Amendment of the United States Constitution.

The Supreme Court has set forth a balancing test to weigh the interests of an individual government employee against the government employer under the circumstances. *Pickering v. Bd. of Ed.*, 391 U.S. 563, 568 (1968). To determine a public employee's free speech rights, courts must weigh the citizen's right "in commenting upon matters of public concern" against the state's interest "in promoting the efficiency of the public services it performs through its employees." *Id.* Regarding patronage dismissals[2] specifically, the Supreme Court provides that though "the practice of patronage dismissals clearly infringes First Amendment interests, [the] inquiry is not at an end, for the prohibition on encroachment of [such] protections is not an absolute. Restraints are permitted for appropriate reasons." *Elrod v. Burns*, 427 U.S. 347, 360 (1976). Further, "if an employee's private political beliefs would interfere with the discharge of his public duties, his First Amendment Rights may be required to yield to the State's vital interest in maintaining

---

[2] Patronage dismissals refers to the termination of government employees for allegedly political reasons.

governmental effectiveness and efficiency." *Branti v. Finkel*, 445 U.S. 507, 517 (1980).

The Fifth Circuit holds that the *Elrod-Branti* exception for patronage dismissals applies when the discharged employee holds a confidential or policymaking role. "When nonpolicymaking, nonconfidential employees are discharged solely because of their private political views, little, if any weighing of an employee's First Amendment rights against an employer's right to loyal and efficient service is necessary, and the employee's right s will usually prevail." *Garza v. Escobar*, 972 F.3d 721, 729 (5th Cir. 2020). When an employee has a "policymaking" or "confidential" role, however, "the government's interests more easily outweigh the employee's" lending the *Pickering* test in favor of the government employer. *Id.*

The Fifth Circuit has further held that ADAs occupy a policymaking role such that they fall under the *Elrod-Branti* exception. *Aucoin v. Haney*, 306 F.3d 268 (5th Cir. 2002). The Fifth Circuit reached this conclusion in *Aucoin v. Haney*, after considering how sister circuits have ruled on the issue, analyzing how Louisiana law defines the position of ADA, and looking at the specific ADA's duties in that position. It first noted that ADAs are vested with "broad discretionary powers." *Id.* at 275. It further noted that under the Louisiana Constitution, ADAs "shall have charge of every criminal prosecution by the state in [their] district, be the representative of the state before the grand jury in [their] district, and be the legal advisor[s] to the grand jury" and they shall also represent the stat in civil proceedings. La. Const. Art. 5, §26(B); La. Rev. Stat. §16:1(B). Further, "[a]ssistant district attorneys serve at the pleasure of and may be removed at the discretion of the district attorney." La. Rev. Stat. §16:1(B). The Louisiana Supreme Court has also noted that it is well established that ADAs "may perform the duties of officials under whom they serve…" and that the actions of ADAs can bind the state. *Id.* at 275-76 (citing *State v. Refuge*, 300 So. 2d 489, 490 (La. 1974); *State v. Tanner*, 425 So. 3d 760, 763 (La. 1983)). These cases, however, seem

to be rooted in facts and are generally determined at the summary judgment phase of litigation.

Though acknowledging that she was an ADA, Brewster alleges in her complaint that her daily duties in this role did not involve "policymaking" and were not of "confidential" nature. She alleges that she fell under the lowest ranking of a criminal ADA as she was never a felony prosecutor, rarely handled juvenile or domestic violence cases, and only sometimes was tasked with traffic matters. She alleges that her position largely involved entering into settlements with individuals but that she did not have authority to enter any settlement herself. Instead, she had to report to various supervisors relating to the settlement discussions who had the ultimate authority. Accordingly, she describes her work as taking direction from supervisors and of ministerial nature. She further alleges that she never made, set, or implemented policy, but rather followed the policies and procedures instituted by her supervisors. Additionally, she alleges that she was never privy to any confidential discussions with Montgomery or about the Office.

Brewster further alleges that while her Termination Notice Form states that she was being discharged due to "the need to protect and preserve integrity of the District Attorney's office," in the meeting that preceded the form, then-DA Montgomery informed her that she was being terminated because of his support for Brewster's opponent in the election.

Accepting these facts as true, as the Court must do at this time, the Court finds that Brewster has stated a plausible claim for relief under 42 U.S.C. § 1983. More investigation is necessary to determine whether the nature and extent of Ms. Brewster's duties involved policymaking and/or took on a confidential role. Accordingly, the Court finds that whether Brewster falls under the *Elrod-Branti* exception under law binding on this Court is more appropriate at the summary judgment stage. *See e.g.*, *Aucoin*, 306 F.3d 268 (5th Cir. 2002).

b. **Brewster's Detrimental Reliance/Equitable Estoppel Claim**

Next, Sims seeks dismissal of Brewster's equitable estoppel and/or detrimental reliance claims. R. Doc. 21-1 at 16. To have a viable detrimental reliance claim, a party must establish "(1) a representation by conduct or work; (2) justifiable reliance thereon, and (3) a change of position to one's detriment because of the reliance." *Billiot v. Terrebonne Parish Sch. Bd.*, No. 21-1144, 2021 WL 5083710 at *5 (E.D. La. Nov. 2, 2021) (quoting *Morris v. Friedman*, 663 So. 2d 19, 25 (La. 1995)). Other sections of this court have previously suggested that a higher burden of proof may be appropriate when bringing such a claim against a government agency. *Id.* The factors to consider with this heightened burden are "(1) unequivocal advice from an unusually authoritative source, (2) reasonable reliance on that advice by an individual, (3) extreme harm resulting from that reliance, and (4) gross injustice to the individual in the absence of judicial estoppel." *Id.*

Presently, Brewster alleges that the DA's Employee Handbook which explicitly states that "[a]ll employees may participate as private individuals in the political process" satisfies the first factor of the heightened standard. She further alleges that she reasonably relied on the Handbook when she chose to participate in the political process after also seeing previous DAs permit other ADAs to participate in said process. She then alleges that she suffered "extreme harm" because of her termination in the form of lost wages, benefits, and emotional distress. Lastly, she alleges that she will suffer "gross injustice" if her claim fails because such a finding would "allow [the DA] to lull Ms. Brewster into a false sense of security by promising that her participation in the political process was protected, only to have [the DA] later renege on this promise." *Id.* at 27. Taken together, Brewster alleges facts sufficient for the Court to draw reasonable inferences in her favor. Accordingly, her detrimental reliance claim withstands 12(b)(6) scrutiny.

    c. **Brewster's 29 U.S.C. §2601 and La. R.S. §23:332 Claims**

Finally, Sims requests that this Court dismiss Brewster's claims under 29 U.S.C. § 2601

and La. R.S. §23:332. While such claims for relief were pled in Brewster's Original Complaint, they do not appear in Brewster's Amended Complaint. R. Docs. 1, 19. Accordingly, the Court formally dismisses Brewster's claims under 29 U.S.C.§2601 and La R.S. §23:332.

### III.    CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant Sims' Motion to Dismiss, R. Doc. 21, is **DENIED** in part, and **GRANTED** in part.

New Orleans, Louisiana, this 10th day of May, 2024.

_____
United States District Judge